Owen McGivebn, J.
This is an application for a judicial settlement of an account of a trustee of an inter vivos trust and for a construction.
The settlors herein are John H. Race and his wife, Alice Bannister Race. They created four inter vivos trusts, hereinafter called Race-Duluth Trust, Race-T. G. &. T. Trust, Race-Corn Exchange Trust and Race-Chattanooga Trust. Each trust terminated upon the death of the survivor of the donors.
*156 Alice Bannister Race died April 22, 1940, a resident of New York, leaving a will wherein she devised and bequeathed all her property to her husband, also naming him executor. On August 18, 1948, and again on October 26, 1951, John H. Race executed instruments modifying or amending the Race-T. G. & T. Trust. The first modification called for the appointment of Grier C. Morgan as trustee in the event Z. Demarest Race, the original trustee named, predeceased him. The second modification called for certain changes in the shares of some of the group II beneficiaries named in the Race-T. G. & T. Trust.
In the Race-Duluth Trust there is no provision for modification or revocation. The Race-Chattanooga Trust is irrevocable by its terms. The Race-Corn Exchange Trust, however, is revocable by the trustors and the survivor of them. Consequently, it is apparent that the settlors deliberately made different provisions as to the right to alter, modify, amend or revoke the respective trusts.
Paragraph Eighth of the Race-T. G. & T. Trust indenture did contain a reservation of a power to modify the terms of the instrument. Paragraph Eighth reads as follows: ‘1 Eighth : It is understood and agreed that the Donors herein may by mutual consent and by means of a properly executed instrument modify and vary the terms of this trust instrument, and that they may at any time cancel and annul this trust instrument by written request to the trustee that the same be cancelled or annulled.”
The question thus involved is whether the foregoing paragraph Eighth should be construed as permitting the power of revocation, modification, alteration or amendment to be exercised by John H. Race as surviving donor after the death of his wife, Alice Bannister Race, or whether such power could be exercised only by the mutual act of both donors during the lifetime of both of them, and could no longer be exercised by the surviving donor after the death of one of the donors.
Whether an express trust may be revoked, altered or amended depends upon the wording of the trust instrument relating thereto (3 Scott on Trusts, §§ 330, 331). The donors specifically provided that the trust instrument could be modified by mutual consent of the donors, to be set forth in a properly executed instrument. The language used thus contemplated a modification executed by both donors.
In Croker v. Croker (117 Misc. 558) the court held that where the trust indenture provided that it could be altered, modified, revoked or changed by instrument signed by the joint settlors, the husband, one of the settlors, had no power so to do after his *157 wife, the other settlor, had died. (See, also, Noble v. Rogan, 49 F. Supp. 370; Matter of Solomon, 332 Pa. 462.)
In Culver v. Title Guar. & Trust Co. (269 App. Div. 627, 631) the court said: “In the absence of statute, where by the terms of a trust instrument, a power of revocation has been reserved to the joint settlors of a trust, all must join in the execution of the instrument to effect revocation. Where death has silenced the will of one, attempted revocation by the survivors is a nullity ”.
After the decision by the Appellate Division in that case, an instrument was filed which purported to revoke the trust only to the extent of the share of the corpus originally contributed by them. The Appellate Division upheld the validity of this partial revocation in Culver v. Title Guar. & Trust Co. (270 App. Div. 394). However, the Court of Appeals reversed (296 N. Y. 74) and held that even a partial revocation could not be made after the death of one of the original settlors who created the trust. Judge Conway, at page 77, said: “ Were all of the joint settlors living, the consent of each to a revocation either in whole or in part would be necessary. There appears to be equal reason for forbidding whole or partial revocation when one of them is dead and may not be heard.”
It is contended that since the deceased donor made the surviving donor her executor, he had the right to revoke or amend. The donor’s power to revoke the trust under section 23 of the Personal Property Law was personal to her and terminated upon her death. It cannot be exercised by her executor or legatee (Culver v. Title Guar. & Trust Co., 296 N. Y. 74, supra; Cook v. City Bank Farmers Trust Co., 3 A D 2d 634).
In Culver v. Title Guar. & Trust Co. (269 App. Div. 627, 631, supra) the court said: “A power of revocation, reserved in a trust instrument or arising by operation of law is neither alienable or descendable.”
The intent of the donors is clear from the quoted article Eighth of the Eace-T. Gr. & T. Trust indenture. It is not ambiguous.
The court, for the foregoing reasons, concludes that the purported modifications dated August 18, 1948 and October 26, 1951, were legally ineffectual to accomplish such purpose.
The application to judicially settle and allow the accounting for the period from July 1, 1949 to June 14, 1956 and for the other relief requested is granted in accordance with the stipulation agreed to by the various parties. Settle order.