HARRIS TRUST & SAVINGS BANK et al. v. BURLINGAME et al.

No. 33122.   March 9, 1948.

*190 P. 2d 1017.*

Mosteller & McElroy, of Oklahoma City, for plaintiffs in error.

Martin, Logan, Finney & Stanton, of Tulsa, for defendant in error Marie Foster Burlingame.

Pinkerton & Wills, of Tulsa, and Chapman & Cutler, of Chicago, Ill., for cross-petitioner in error Harris Trust & Savings Bank.

LUTTRELL, J. This action was brought by Harris Trust & Savings Bank, one of the trustees of two trusts, one created by Henry Vernon Foster in his lifetime, hereinafter referred to as the living trust, and the other created in the will of Henry Vernon Foster, hereinafter referred to as a testamentary trust. The defendants in the action were the individual trustee, the surviving widow of Foster, and the children and grandchildren of Foster. The widow and children were beneficiaries in the trust, and the grandchildren remaindermen. The action was brought under authority of 60 O.S. 1941 §175.23, for the construction of certain provisions of the instruments creating the respective trusts, and to determine the powers and duties of the trustees thereunder. From the construction placed upon certain provisions of the trust instruments by the trial court, and its decision as to the duties of the trustees thereunder, the remaindermen have appealed, and the corporate trustee has cross-appealed.

It is agreed by all parties that Foster died testate on June 5, 1939, a resident of Bartlesville, Oklahoma, and that his estate was probated in the county court of Washington county. The living trust was created May 6, 1932, and the testamentary trust on April 10, 1935. At the date of his death Foster left surviving him his widow, who remarried in 1942, and two daughters, one of whom was married prior to the creation of either trust, and the other of whom was married subsequent to the creation of the living trust and prior to the creation of the testamentary trust.

Both the living trust and the testamentary trust provided that out of the estate vested in the trustees three-fifths of the net income should be paid to the wife of Foster and one-fifth of the net income to each of his two daughters, with the remainder over upon their death to the grandchildren. Among the provisions relating to such payments of income is subparagraph (d) of paragraph 5 of the living trust, and subparagraph (d) of paragraph 5 of the third subdivision of the testamentary trust. Three provisions of the two agreements are identical, and read as follows:

"(d) If any beneficiary under the trusts aforesaid shall assign any income to which he or she is entitled, or any part thereof, prior to its actual payment to him or her, or if from bankruptcy or insolvency or from any alienation, voluntary or involuntary, or from any other cause whatsoever, the said income or any part thereof shall, or but for this proviso would, at any time become payable to, or pass to or for the benefit of, any other person

than such beneficiary, his or her right to receive the same shall absolutely cease and determine; and the same shall be added to and invested with the principal of the trust fund, or of his or her share if set off therefrom, during the remainder of the period for which he or she would have been entitled to receive income; but, notwithstanding any of such forfeiture it shall be lawful for said Trustees, in their uncontrolled discretion, and at any time or from time to time during the period for which such beneficiary is so entitled, but without its being obligatory upon them, to pay to or apply for the benefit of such beneficiary or of his or her family so much and such part of the said income as they shall deem proper."

The sole question presented for our determination is whether the passage of the Oklahoma Community Property Law, Title 32, S.L. 1945, p. 118, 32 O.S. Cum. Suppl. 1947, §§66 to 82, inclusive, ipso facto effected an alienation of a part of the income of the beneficiaries, all of whom were married prior to the enactment of that law, so that by reason of the provisions of subsection (d), quoted above, their right to receive their proportionate part of the income from the trusts terminated. The trial court found that it did not, and directed the trustees to continue to pay to each beneficiary her proportionate share of the income from each trust. The corporate trustee, and the individual trustee and beneficiary, the widow, assert that the conclusion reached by the trial court was correct.

The remaindermen contend that the trial court erred in so holding. Briefly stated, their contention is that all of the income beneficiaries being married women, the enactment of the community property law necessarily resulted in some part of the income of the beneficiaries, when distributed to them, passing to and vesting in their husbands, and that because of this fact the right of the beneficiaries to receive distributions of income was, by the provisions of the above-quoted section, terminated, except as to such distribution as the trustees in their uncontrolled discretion should make to the beneficiaries, or to or for the benefit of their families. They urge that the broad and comprehensive language of subsection (d) discloses an intent on the part of Foster to terminate the right of any beneficiary to receive her proportionate part of the income from the trust, if any payment made thereunder to such beneficiary should pass to or for the benefit of any person other than the beneficiary, regardless of the relationship between the beneficiary and such other person, and whether the passage of such part of the income to such other person was occasioned by any act on the part of the beneficiary, or by operation of any law thereafter enacted.

The cardinal rule of construction applicable to instruments creating trusts of this character is that they are to be liberally construed to carry out the intention of the trustor, which intention is controlling. Dunnett v. First National Bank & Trust Co., 184 Okla. 82, 85 P. 2d 281; 65 C.J. p. 497, §241; 54 Am. Jur. p. 36, §18. And all intendments are in favor of the beneficiary of the trust. 65 C.J. p. 499, §243.

Applying these rules to subsection (d), quoted above, it is clear that the trustor by such provision intended to protect the beneficiaries, his wife and daughters, from their own improvidence; from the demands of creditors or schemes of designing persons, dangers to which their right to receive the income would be subject under then existing laws. Clearly he did not anticipate or attempt to guard against the possible enactment of a future law whereby a portion of the income of a beneficiary might be vested in her husband, or in some other member of her immediate family. He sought to secure to each beneficiary the right to receive her proportionate part of the income during her lifetime, so that neither by any improvident or unwise act on her part, nor by the operation

of legal remedies for the assertion of the rights of creditors or other third parties, such beneficiary might be divested, in whole or in part, of the right to receive her proportionate part thereof. And the fact that he contemplated that such income would inure to the benefit of the family of the beneficiary is indicated by the latter portion of the subsection. The general terms following the particular or specific dangers to the right to receive the income enumerated in the subsection must be construed to embrace only things of the same kind or species as those comprehended by the specific terms preceding them. Vogel v. Cobb, 193 Okla. 64, 141 P. 2d 276, 148 A.L.R. 774. The trial court correctly held that the trustor did not intend to subject the income of the beneficiaries to forfeiture in event of subsequent enactment of the community property law.

In view of the conclusion reached it is unnecessary to determine what effect, if any, the enactment of the community property law had upon the income received by the beneficiaries.

In their petition for construction of the terms of the trusts and guidance in carrying out their provisions, the trustees submitted other questions to the trial court. It is not contended on this appeal that the trial court erred in its decision as to such questions, and we therefore do not pass upon them.

Affirmed.